**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SMART RF INC., §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>§<br>T-MOBILE USA, INC., §<br>§<br>Defendant. §<br>§<br>§<br>§ | CIVIL ACTION NO. 2:26-cv-00496<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Smart RF Inc. ("Smart RF") files this Complaint against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant") for infringement of U.S. Patent No. 8,817,859 (the "'859 Patent"); U.S. Patent No. 9,621,236 (the "'236 Patent"); U.S. Patent No. 11,588,520 (the "'520 Patent"); and U.S. Patent No. 12,647,142 (the "'142 Patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Smart RF Inc. is a Canadian business corporation located at 38 Royal Oak Drive, NW Calgary, AB, T3G 5P2, Canada.

2.      On information and belief, Defendant T-Mobile USA, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. T-Mobile USA, Inc. is registered to conduct business in the State of Texas and has appointed Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 as its agent for service of process.

1

**JURISDICTION AND VENUE**

3.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.     This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of cellular services that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

5.     Defendant maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district, (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation sites owned or leased by Defendant, and (c) maintaining and operating other places of business in this district, including those where research, development, or sales are conducted, where customer service is provided, or where repairs are made. Defendant's significant physical presence in this District includes, but not limited to, ownership of or control over property, inventory, or infrastructure. For example, Defendant maintains a corporate office in this District, located at 3560 Dallas Pkwy, Frisco, Texas 75034. Defendant also maintains numerous retail stores in this District through which it transacts business, including in Allen, Athens, Beaumont, Canton, Denton,

2

Frisco, Kilgore, Longview, Marshall, McKinney, Nacogdoches, Texarkana, and Tyler, Texas. On information and belief, Defendant further maintains cellular base stations in this District, including on cellular towers and other installation sites owned or leased by Defendant.

6.      In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods and services provided to Texas residents. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this district. For example, Defendant receives revenue from its corporate stores in this district, by selling network access, phones/products, and related wireless services to customers located in this district, and by receiving payment for network access, phones/products, and related wireless services.

7.      Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

8.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has regular and established places of business in this District. On information and belief, Defendant

maintains "regular and established" places of business in this district, including a corporate office in this District, located at 3560 Dallas Pkwy, Frisco, Texas 75034, and numerous retail stores in this District through which it transacts business, including in Allen, Athens, Beaumont, Canton, Denton, Frisco, Kilgore, Longview, Marshall, McKinney, Nacogdoches, Texarkana, and Tyler, Texas.

## **BACKGROUND**

9.      As the cellular market's technology and generational demands evolve (from 2G and 3G to 4G, 5G, and beyond), the demand for a cellular carrier's base stations to consistently provide dependable signal quality, while simultaneously optimizing power efficiency, continues to rise. The efficient operation of a base station's RF power amplifiers (PAs) is crucial to ensure this reliability. This is due to the pivotal role that PAs play in signal transmission, serving as the vital link between generated signals and their effective broadcast to cellular devices and ensuring reliability amidst widely and rapidly changing conditions.

10.      For example, when a base station generates an RF signal, it undergoes amplification through a PA before transmission via the antenna. This amplification is essential to ensure that the signal can reach its intended destination, covering the necessary distance and penetrating obstacles effectively. In an ideal scenario, the PA takes the input signal and efficiently transforms it into a higher-power signal proportionate to the input; it achieves this transformation with maximum power efficiency, converting most of the supplied DC power into useful signal output power.

11.      However, achieving this ideal scenario poses a significant challenge for cellular carriers in the real world because PAs are inherently nonlinear.[1] When PAs operate near their maximum power levels, they introduce unintended non-linear distortions into the amplified

---

[1] "How DPD improves power amplifier efficiency," available at:
https://www.5gtechnologyworld.com/how-dpd-improves-power-amplifier-efficiency/.

signals. These distortions lead to signal quality degradation, heightened network operating costs, and regulatory concerns, especially regarding adjacent channel power ratio (ACPR) requirements. To address this, PAs must operate at a point significantly below their saturation level, resulting in notably low power efficiency, often less than 10%. In these scenarios, over 90% of the DC power supplied to the amplifier is dissipated as heat.

12.    Such operational constraints pose significant challenges to a cellular carrier's ability to consistently deliver reliable signals from their base stations. To address these challenges, it is understood that cellular carriers integrate digital pre-distortion hardware and/or software into the infrastructure of their cellular base stations to linearize the PAs found within these stations and improve overall system performance. This integration allows cellular carriers to operate their base stations' PAs closer to saturation, resulting in higher output power and greater power efficiency, while maintaining linearity.[2]

13.    In a typical communication system, the digital pre-distortion hardware and/or software processes each input signal independently to accurately predict and correct distortions introduced by the PAs in each path including the cross-coupling between these paths. This precision ensures that signals, arriving from different paths and devices, undergo individualized optimization, improving both linearity and power efficiency. Digital predistortion ("DPD") tailors corrections to the unique characteristics of each signal path, facilitating the operation of multiple-input multiple-output ("MIMO") configurations and ensuring reliable and high-quality cellular communication services. The Asserted Patents relate to systems and methods for providing digital pre-distortion in wireless communication systems.

---

[2] *Id.*

## THE ASSERTED PATENTS

14.    Smart RF is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Smart RF also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

15.    The '859 Patent is entitled, "Digital multi-band predistortion linearizer with nonlinear subsampling algorithm in the feedback loop." The '859 Patent lawfully issued on August 26, 2014, and stems from U.S. Patent Application No. 13/274,290, which was filed on October 14, 2011.

16.    The '236 Patent is entitled, "System and method for distortion correction in MIMO and multiband transmitters." The '236 Patent lawfully issued on April 11, 2017, and stems from U.S. Patent Application No. 14/391,421, which was filed on June 30, 2014.

17.    The '520 Patent is entitled, "Multi-cell processing architectures for modelling and impairment compensation in multi-input multi-output systems." The '520 Patent lawfully issued on February 21, 2023, and stems from U.S. Patent Application No. 17/367,451, which was filed on July 5, 2021.

18.    The '142 Patent is entitled, "Digital multi-band predistortion linearizer with non-linear subsampling algorithm in the feedback loop." The '142 Patent lawfully issued on June 2, 2026, and stems from U.S. Patent Application No. 17/207,614, which was filed on March 20, 2021.

19.    Smart RF and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Smart RF may recover pre-suit damages for the Asserted Patents.

20.    The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by

6

the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,817,859)

21.     Plaintiff incorporates the preceding paragraphs herein by reference.

22.     Smart RF is the assignee of the '859 Patent, with ownership of all substantial rights, title, and interest in and to the '859 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

23.     The '859 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on August 26, 2014, after full and fair examination.

24.     Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the '859 Patent in this District and elsewhere in Texas and the United States through the provision of its cellular network. Such infringement includes, but is not limited to, the making, using, and selling of cellular services that leverage and infringe the inventions of the '859 Patent. For example, the accused cellular network includes cellular base stations that employ digital pre-distortion techniques covered by the '859 Patent (collectively, the "'859 Accused Instrumentalities"). For example, on information and belief, the cellular network includes one or more base stations that include hardware and/or software, such as the hardware operating MaxLin DPD technology. The MaxLin DPD technology incorporates NanoSemi Linearizer Core technology. To the extent that the '859 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC or other third-party solution that includes substantially similar hardware and performs the same operations detailed below.

25.     On information and belief, by way of illustration only, Defendant, via its operation of the '859 Accused Instrumentalities, satisfied and continues to satisfy each and every element of claim 1 of the '859 Patent. The '859 Accused Instrumentalities include a "concurrent multi-band linearized transmitter." For example, the '859 Accused Instrumentalities comprise base stations, such as eNodeBs and gNodeBs that comprise a transmitter for transmitting cellular signals.[3] Further, each of the base stations contain a linearizing amplification solution such as the MaxLin DPD technology or a substantially similar linearization solution. Such linearizing hardware receives and linearizes multi-band signals which are delivered to the power amplifier for multiband transmission.



*Figure 1.*[4]

On information and belief, because the multi-band signals are used to transmit a carrier aggregated 4G or 5G signal, they are concurrent in nature.[5]

---

[3] *See* https://www.lightreading.com/5g/t-mobile-rumored-to-be-eyeing-5g-equipment-from-samsung.
[4] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.
[5] *See* https://www.rfpage.com/carrier-aggregation-5g/.

26.    On information and belief, the '859 Accused Instrumentalities used by Defendant include "a concurrent digital multi-band predistortion block, having a plurality of outputs, each for producing a predistorted signal corresponding to a single frequency channel of the multi-band linearized transmitter." For example, the concurrent digital multi-band predistortion block comprises the actuator within the multi-band linearizer core. As can be seen below, the predistortion block has a plurality of outputs.



*Figure 2.*[6]

---

[6] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.

Because the multi-band signals are used to transmit a carrier aggregated 4G or 5G signal, it is believed that each output corresponds to a single frequency channel.[7]

27.    On information and belief, the '859 Accused Instrumentalities used by Defendant include "a signal observation feedback loop including an analyzing and modeling stage directly connected to each said plurality of outputs of said digital multi-band predistortion block for receiving the respective predistorted signals and for using said received predistorted signals in controlling said digital multi-band predistortion block." For example, the feedback loop is shown below in green:



Figure 1a: Signal correction IP cores for transmitter

*Figure 3.*[8]

The analyzing and modeling stage comprises the linearizer core and is directly connected to the outputs of the predistortion block at the MUX/collaboration unit. The analyzing and modeling stage controls the predistortion block via the coefficient bank, which controls the parameters used by the actuator.

28.    Smart RF has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates

---

[7] *See* https://www.rfpage.com/carrier-aggregation-5g/.
[8] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.

Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 9,621,236)

29.     Plaintiff incorporates the preceding paragraphs herein by reference.

30.     Smart RF is the assignee of the '236 Patent, with ownership of all substantial rights, title, and interest in and to the '236 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

31.     The '236 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on April 11, 2017, after full and fair examination.

32.     Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the '236 Patent in this District and elsewhere in Texas and the United States through the provision of its cellular network. Such infringement includes, but is not limited to, the making, using, and selling of cellular services that leverage and infringe the inventions of the '236 Patent. For example, the accused cellular network includes cellular base stations that employ digital pre-distortion techniques covered by the '236 Patent (collectively, the "'236 Accused Instrumentalities"). For example, on information and belief, the cellular network includes one or more base stations that include hardware and/or software, such as the hardware operating MaxLin DPD technology. The MaxLin DPD technology incorporates NanoSemi Linearizer Core technology. To the extent that the '236 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC or other third-party solution that includes substantially similar hardware and performs the same operations detailed below.

33.     On information and belief, by way of illustration only, Defendant, via its operation of the '236 Accused Instrumentalities, performed and continues to perform each and every element of claim 1 of the '236 Patent. The '236 Accused Instrumentalities perform a "method for multiple-input multiple-output impairment pre-compensation in a multiple-input and multiple-output transmitter having a multiple-input multiple-output radio frequency (RF) power amplifier." For example, the '236 Accused Instrumentalities, such as eNodeBs and gNodeBs within the cellular network provided by Defendant, perform a method for MIMO impairment pre-compensation. Specifically, the '236 Accused Instrumentalities include hardware, such as a chip equipped to use a NanoSemi Linearizer, that performs impairment signal predistortion.[9] Such hardware performs impairment pre-compensation and "integrates into the digital baseband of a System on Chip (SoC) modem to digitally correct for nonlinearities, linear imperfections, interference and load variations…The NanoSemi Linearizer Core is NanoSemi's digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path."[10] As shown in the figure below, the multiple inputs are identified in the purple box and the multiple-outputs of the RF power amplifier are identified in the light blue box:[11]

---

[9] *See, e.g.,* Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," pgs. 2-3.
[10] *Id.*
[11] *Id.* at 3.



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 4.*

34.     On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "receiving at the multiple-input and multiple-output transmitter a plurality of input signals forming a multiple-input signal." For example, the '236 Accused Instrumentalities include hardware that receives a plurality of input signals (identified in the purple box from the figure above) forming a multiple-input signal in a MIMO system.[12] Likewise, the figure above shows that the system is a "2x2 MIMO" system.

35.     On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "generating a pre-distorted multiple-input signal from the received multiple-input signal." For example, the '236 Accused Instrumentalities generate a pre-distorted multiple-input signal from the received multiple-input signal by using a block of actuators to distort the multiple-input signal (shown in the red box below).[13]

---

[12] *Id.*
[13] *Id.*



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 5.*

36.     On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "generating a multiple-output signal by feeding the pre-distorted multiple-input signal into a multiple-input and multiple-output transmitter." For example, the pre-distorted multiple-input signal (shown in green below) is amplified by the PA block (shown in blue below), generating a multiple-output signal (shown in brown below).[14]

---

[14] *Id.*; *id.* at 2.



*Figure 6.*



*Figure 7.*

37.    On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "estimating impairments generated by nonlinear crosstalk in the multiple-input and multiple-output RF power amplifier, the nonlinear crosstalk being generated between respective channels of the multiple-input and multiple-output RF power amplifier while being driven by the plurality of input signals." For example, the '236 Accused Instrumentalities estimate the signal impairments based on the feedback signals from the power amplifier block and from the multiple pre-distorted signals. Such estimation may comprise a characterization process

that models nonlinear crosstalk of the multiple bands being amplified.[15] The impairments comprise nonlinear crosstalk between bands while the power amplifier is being driven. For example, the '236 Accused Instrumentalities suppress the noise and interference between desired bands:[16]



Figure 8.

38.    On information and belief, Defendant, via its operation of the '236 Accused Instrumentalities, performs "adjusting the pre-distorted multiple-input signal to compensate for the estimated impairments." For example, the actuators within the '236 Accused Instrumentalities comprise a matrix of pre-processing cells that adjusts the pre-distorted multiple-input to correct for the nonlinear distortion and crosstalk between the different paths.[17]

39.    Smart RF has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates

---

[15] *Id.* at 5.

[16] Exhibit 2, "Elevating 4G and 5G Infrastructure Connectivity," pg. 7.

[17] Exhibit 1 at 3 ("The estimator is implemented in a small number of logic gates and does not require a dedicated processor."); *see also id.* at 3-4 (explaining the utilization of "real-time estimation…The estimator re-computes coefficients for the actuator in the background and updates them.").

Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 11,588,520)

40.    Plaintiff incorporates the preceding paragraphs herein by reference.

41.    Smart RF is the assignee of the '520 Patent, with ownership of all substantial rights, title, and interest in and to the '520 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

42.    The '520 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on February 21, 2023, after full and fair examination.

43.    Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the '520 Patent in this District and elsewhere in Texas and the United States through the provision of its cellular network. Such infringement includes, but is not limited to, the making, using, and selling of cellular services that leverage and infringe the inventions of the '520 Patent. For example, the accused cellular network includes cellular base stations that employ digital pre-distortion techniques covered by the '520 Patent (collectively, the "'520 Accused Instrumentalities"). For example, on information and belief, the cellular network includes one or more base stations that include hardware and/or software, such as the hardware operating MaxLin DPD technology. The MaxLin DPD technology incorporates NanoSemi Linearizer Core technology. To the extent that the '520 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC or other third-party solution that includes substantially similar hardware and performs the same operations detailed below.

44.     On information and belief, by way of illustration only, Defendant, via its operation of the '520 Accused Instrumentalities performed and continues to perform each and every element of claim 1 of the '520 Patent. The '520 Accused Instrumentalities perform a "method for predistortion." For example, the '520 Accused Instrumentalities, such as eNodeBs and gNodeBs within the cellular network provided by Defendant, perform a method for predistortion. Specifically, the '520 Accused Instrumentalities include hardware, such as a chip equipped to use a NanoSemi Linearizer, that performs impairment signal predistortion.[18] Such hardware performs impairment pre-compensation and "integrates into the digital baseband of a System on Chip (SoC) modem to digitally correct for nonlinearities, linear imperfections, interference and load variations…The NanoSemi Linearizer Core is NanoSemi's digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path."[19]

45.     On information and belief, Defendant, via its operation of the '520 Accused Instrumentalities, performs "receiving a plurality of input signals forming received multiple input (MI) signals." For example, the '520 Accused Instrumentalities include hardware that receives a plurality of input signals (identified in the purple box from the figure below) forming a multiple-input signal in a MIMO system.[20]

---

[18] *See, e.g.,* Exhibit 1, "NanoSemi's Value Proposition and Competitive Advantages," pgs. 2-3.
[19] *Id.*
[20] *Id.*



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 9.*

Likewise, the figure above shows that the system is a "2x2 MIMO" system, meaning there are two inputs.

46.     On information and belief, Defendant, via its operation of the '520 Accused Instrumentalities, performs "generating a pre-distorted MI signal from the received MI signals." For example, the '520 Accused Instrumentalities generate a pre-distorted multiple-input signal from the received multiple-input signals by using a block of actuators to distort the multiple-input signal (shown in the red box below).[21]

---

[21] *Id.*



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 10.*

47.     On information and belief, Defendant, via its operation of the '520 Accused Instrumentalities, performs "generating a multiple-output (MO) signal by feeding the pre-distorted MI signal into a multiple-input and multiple-output transmitter." For example, the pre-distorted multiple-input signal (shown in green below) is amplified by the PA block (shown in blue below), generating a multiple-output signal (shown in brown below).[22]

---

[22] *Id.*; *id.* at 2.



*Figure 11.*



*Figure 12.*

48.     On information and belief, Defendant, via its operation of the '520 Accused Instrumentalities, performs "estimating a MIMO digital predistortion (DPD) behavioral model of the MIMO transmitter by comparing the pre-distorted MI signals and the MO signal of the MIMO transmitter." For example, the '520 Accused Instrumentalities estimate the signal impairments based on the feedback signals from the power amplifier block and from the multiple pre-distorted signals. Such estimation involves comparing the pre-distorted MI signals and the MO signal, as

evidenced by the feedback loop (shown in green below), which uses the predistorted signal and

the transmitted signal to adjust the coefficients: 23



Figure 1a: Signal correction IP cores for transmitter

*Figure 13.*

49.    On information and belief, Defendant, via its operation of the '520 Accused

Instrumentalities, performs "adjusting at least one signal in the received MI signal to generate

the pre-distorted MI signal to compensate for impairments in the MIMO transmitter by applying

a processing function identified by the behavioral model to the at least one signal." For example,

the actuators within the '520 Accused Instrumentalities comprise a matrix of pre-processing cells

that adjusts the pre-distorted multiple-input to correct for the nonlinear distortion and crosstalk

between the different paths.[24]

50.    Smart RF has been damaged as a result of Defendant's infringing conduct described

in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates

Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty,

together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

---

[23] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.

[24] Exhibit 1 at 3 ("The estimator is implemented in a small number of logic gates and does not require a dedicated processor."); *see also id.* at 3-4 (explaining the utilization of "real-time estimation…The estimator re-computes coefficients for the actuator in the background and updates them.").

## COUNT IV

(INFRINGEMENT OF U.S. PATENT NO. 12,647,142)

51.    Plaintiff incorporates the preceding paragraphs herein by reference.

52.    Smart RF is the assignee of the '142 Patent, with ownership of all substantial rights, title, and interest in and to the '142 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

53.    The '142 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on June 2, 2026, after full and fair examination.

54.    Defendant has infringed and continues to directly infringe one or more claims including at least claim 1 of the '142 Patent in this District and elsewhere in Texas and the United States through the provision of its cellular network. Such infringement includes, but is not limited to, the making, using, and selling of cellular services that leverage and infringe the inventions of the '142 Patent. For example, the accused cellular network includes cellular base stations that employ digital pre-distortion techniques covered by the '142 Patent (collectively, the "'142 Accused Instrumentalities"). For example, on information and belief, the cellular network includes one or more base stations that include hardware and/or software, such as the hardware operating MaxLin DPD technology. The MaxLin DPD technology incorporates NanoSemi Linearizer Core technology. To the extent that the '142 Accused Instrumentalities do not include MaxLin DPD technology, they include a custom ASIC or other third-party solution that includes substantially similar hardware and performs the same operations detailed below.

55.    On information and belief, by way of illustration only, Defendant via its operation of the '142 Accused Instrumentalities, satisfied and continues to satisfy each and every element of claim 1 of the '142 Patent. The '142 Accused Instrumentalities include a "linearized transmitter."

For example, the '142 Accused Instrumentalities comprise base stations, such as eNodeBs and gNodeBs that comprise a transmitter for transmitting cellular signals.[25] Further, each of the base stations contain a linearizing amplification solution, that is equipped to use MaxLin DPD technology.

56.    On information and belief, the '142 Accused Instrumentalities used by Defendant include "a digital predistorter block in a transmit signal path effecting signal distortion to output a plurality of distinct concurrent predistorted signals, each of the distinct concurrent predistorted signals being a function of a single input signal." For example, the digital predistorter block comprises the actuator that distorts the input signals.

---

[25] *See* https://www.lightreading.com/5g/t-mobile-rumored-to-be-eyeing-5g-equipment-from-samsung.



*Figure 14.*[26]

Because the signals are used to transmit a carrier aggregated 4G or 5G signal, it is believed that each input and output corresponds to a single frequency channel and that they are concurrent.[27]

57.    On information and belief, the '142 Accused Instrumentalities used by Defendant include "a transmitter block connected in the transmit signal path for combining said plurality of distinct concurrent predistorted signals for transmission by a power amplifier block." For

---

[26] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.
[27] *See* https://www.rfpage.com/carrier-aggregation-5g/.

example, the '142 Accused Instrumentalities include a transmitter block shown in green and a

power amplifier block shown in red:[28]



Figure 1a: Signal correction IP cores for transmitter

*Figure 15.*

58.    On information and belief, the '142 Accused Instrumentalities used by Defendant

include "a signal observation feedback loop configured to effect concurrent sampling of the

amplified concurrent multi-band signals at a subsampling frequency lower than twice a highest

signal frequency in the amplified concurrent multi-band signals." For example, the '142 Accused

Instrumentalities include the feedback loop shown below (shown in green below): [29]



Figure 1a: Signal correction IP cores for transmitter

---

[28] *Id.* (explaining that the '142 Accused Instrumentalities comprise a "digital pre-distortion linearizer engine to correct for nonlinear distortions in the transmit path").

[29] *See* Exhibit 1, NanoSemi's Value Proposition and Competitive Advantages, p. 2.

*Figure 16.*

The feedback path is configured to perform a down-converting subsampling operation to generate a plurality of concurrent and distinct feedback signals.[30]

59.     On information and belief, the '142 Accused Instrumentalities used by Defendant include "an analyzing and modelling block configured to use the concurrent and distinct feedback signals for synthesizing predistorter coefficients for the digital predistorter block." For example, the '142 Accused Instrumentalities include an analyzing and modeling block (shown in red, which comprises the calibration unit) first feedback signals (shown in green) taken from an output of the power amplifier, and second feedback signals (shown in blue) taken concurrently from the concurrent predistorted signals:[31]



Figure 2: NanoSemi Linearizer™ core with two actuators with one estimator for 2x2 MIMO.

*Figure 17.*

---

[30] *Id.* at 4 (explaining that the feedback sampling can occur "at [the] same or lower sampling rate than DAC").

[31] *Id.*

Within the analyzing and modeling stage, the estimator synthesizes predistorter coefficients for the digital predistorter block.[32]

60.    Smart RF has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Smart RF in an amount that adequately compensates Smart RF for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

61.    Smart RF is entitled to recover from Defendant the damages sustained by Smart RF as a result of Defendant's wrongful acts and infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

62.    Smart RF has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Smart RF is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

63.    Smart RF hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

64.    Smart RF respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Smart RF the following relief:

---

[32] *Id*. (explaining that the '142 Accused Instrumentalities include a "real time Estimator block").

(i)     A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii)    A judgment that Defendant account for and pay to Smart RF all damages and costs incurred by Smart RF because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iii)   A judgment that Defendant account for and pay to Smart RF a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(iv)    A judgment that Smart RF be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(v)     A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and an award of Smart RF's reasonable attorneys' fees; and

(vi)    Such other and further relief as the Court deems just and equitable.

Dated: June 23, 2026

Respectfully submitted,

*/s/ Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**NELSON BUMGARDNER**
**CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
jon@nelbum.com
nathan@nelbum.com

**ATTORNEYS FOR PLAINTIFF**
**SMART RF INC.**